IN RE FORECLOSURE OF WEBBER

[148 N.C. App. 158 (2001)]

IN RE: FORECLOSURE OF DEED OF TRUST FROM RALPH O. WEBBER AND WIFE, NANCY A. WEBBER, RECORDED IN BOOK 169, PAGE 819, CHOWAN COUNTY PUBLIC REGISTRY

No. COA01-66

(Filed 28 December 2001)

**Mortgages— foreclosure—application of proceeds—authority of trustee**

    A judgment from superior court and an order from the clerk of superior court resolving a dispute over a trustee's application of the proceeds of a foreclosure sale were vacated where the trustee paid $102,587.50 for the removal of the mortgagors' personal property and $9,619.68 in attorney fees. The payments in dispute fall under N.C.G.S. § 45-21.31(a) and are in the sole province of the trustee; neither the clerk nor the superior court had statutory authority to review the trustee's proposed application of the proceeds of the foreclosure sale or to allow, disallow, or modify the amount of such proposed payments. A party wishing to challenge payments made pursuant to the statute may do so in a separate proceeding against the trustee for a breach of fiduciary duty once the payments have been made, and a trustee seeking guidance may institute a declaratory judgment action.

    Appeal by mortgagors and substitute trustee from judgment entered 6 October 2000 by Judge G. K. Butterfield in Chowan County Superior Court. Heard in the Court of Appeals 16 October 2001.

    *Trimpi, Nash & Harman, L.L.P., by John G. Trimpi, for mortgagor-appellant/appellee Ralph O. Webber.*

    *Pritchett & Burch, PLLC, by Lloyd C. Smith, Jr. and Lars P. Simonsen, for substitute trustee-appellant/appellee William W. Pritchett, Jr.*

    *Irvine Law Firm, PC, by David J. Irvine, Jr. and Stephanie B. Irvine, for mortgagor-appellant/appellee Nancy A. Webber.*

HUNTER, Judge.

    This case involves a dispute over a trustee's proposed application of the proceeds of a foreclosure sale. William W. Pritchett, Jr. ("the trustee") sought pre-approval from the clerk of superior court of cer-

IN RE FORECLOSURE OF WEBBER

[148 N.C. App. 158 (2001)]

tain costs, expenses, and obligations associated with the foreclosure sale of certain property. Ralph O. Webber and his wife Nancy A. Webber (together "the mortgagors"), owners of the property prior to the sale, raised objections to certain of these proposed payments before the clerk of superior court. The clerk of superior court held a hearing and entered an order, the parties appealed from the clerk's order, and the superior court addressed the merits of the dispute and entered judgment. We hold that neither the clerk of superior court, nor the superior court on appeal, had statutory authority to approve, disapprove, or modify these proposed payments, or to rule on whether the trustee breached his fiduciary duties, and we therefore vacate the judgment of the superior court and the order of the clerk of superior court.

We begin with a brief synopsis of the pertinent facts and procedural history. On 11 March 1988, the mortgagors executed a deed of trust upon a parcel of land located in Chowan County, North Carolina, in favor of The Federal Land Bank of Columbia. The deed of trust was subsequently assigned to AgFirst Farm Credit Bank ("the mortgagee"). At some point in time, the mortgagors defaulted on the promissary note secured by the deed of trust, thereby triggering a right to foreclose on the part of the mortgagee. In September of 1998, Mr. Pritchett, a licensed attorney in North Carolina, was appointed as the substitute trustee. Prior to the final foreclosure sale, which occurred on 2 June 1999, Perley Andrew Thomas contacted the trustee and conditioned his willingness to bid upon the trustee's assurance that the trustee would be responsible for removing Mr. Webber and his personalty from the property if Mr. Thomas became the high bidder. The trustee agreed to this condition and, after numerous upset bids, Mr. Thomas became the high bidder.

The property was conveyed to Mr. Thomas on 2 September 1999. At that time Mr. Webber still had not removed himself or his personalty from the property. Mr. Webber ultimately removed himself from the property but left a significant amount of personalty on the premises, including horses, dogs, cats, inoperable vehicles, over 200 scrap tires, batteries, barrels, oil tanks, lumber, cans of paint, furnishings, books, and clothing. The trustee hired Thurman Price, a private contractor, to remove Mr. Webber's personalty. Mr. Price removed the personalty over the next three weeks, employing between ten and fifteen workers, a front-end loader, an excavator, and a bulldozer. Mr. Price billed the trustee for 526 hours of labor and the use of the machinery for a total of $102,587.50. Mr. Price also

removed and temporarily stored twenty-nine horses, and charged $33,860.00 for storing, feeding and care for the horses.

In October of 1999, the trustee made an "interim payment" of $50,000.00 to Mr. Price. Later that month, prior to making any other payments from the proceeds of the sale, the trustee filed a proposed "Final Report and Account of Foreclosure Sale," seeking pre-approval by the clerk of superior court of the payments he intended to make, including: $102,587.50 for the removal of Mr. Webber's personalty from the property by Mr. Price; approximately $8,000.00 for the care of approximately thirty horses removed from the property; and $12,000.00 in legal fees. The clerk held a hearing on the matter, and entered an order on 24 November 1999 approving all expenses except (1) the attorney's fees, which were reduced to $9,000.00, and (2) the fees for the removal of Mr. Webber's personalty, which were disallowed. The trustee, Mr. Webber, and Mrs. Webber appealed from this order to the superior court.

Following a hearing on 14 March 2000, the superior court entered an order containing findings of fact and conclusions of law, including: that the court had jurisdiction to hear the appeal and to conduct a hearing *de novo* on the merits; that the clerk did not exceed his authority in approving certain expenses and disallowing others; that the trustee did not breach his fiduciary duty by promising Mr. Thomas that he would remove Mr. Webber and his personalty from the property, or by hiring Mr. Price to remove the personalty; that the expenses of $102,587.50 for removal of the personalty and $33,860.00 for storage and care of the horses should be approved; and that the attorney's fees should be increased from $9,000.00 to $9,619.68. From this order, the mortgagors and the trustee appeal.

The proper procedure for the application of the proceeds of a foreclosure sale is set forth in Chapter 45, Article 2A of our General Statutes and is divided into two stages. At the first stage, pursuant to subsection (a) of N.C. Gen. Stat. § 45-21.31, the proceeds "shall be applied by the person making the sale" to satisfy certain costs, expenses, and other obligations. N.C. Gen. Stat. § 45-21.31(a) (1999). During this stage: (1) the proceeds of the sale are first applied to any "[c]osts and expenses of the sale, including the trustee's commission . . . and a reasonable auctioneer's fee"; (2) the proceeds are next applied to certain taxes on the property which are due and unpaid; (3) the proceeds are next applied to certain special assessments against the property sold; and (4) the proceeds are next applied to "[t]he obligation secured by the mortgage, deed of trust or condi-

tional sale contract" (including any attorney's fees provided for by such instrument). *Id.*; *see In re Foreclosure of Ferrell Brothers Farms,* 118 N.C. App. 458, 460-61, 455 S.E.2d 676, 677-78 (1995).

At the second stage, pursuant to subsection (b) of N.C. Gen. Stat. § 45-21.31, "[a]ny surplus remaining after the application of the proceeds of the sale as set out in subsection (a) shall be paid to the person or persons entitled thereto, if the person who made the sale knows who is entitled thereto." N.C. Gen. Stat. § 45-21.31(b). If the person who made the sale is in doubt as to who is entitled to the surplus, or if there are adverse claims asserted as to the surplus, "the surplus shall be paid to the clerk of the superior court," which payment discharges the person who made the sale from liability. N.C. Gen. Stat. § 45-21.31(b) and (c). Finally, after the sale is completed and all payments are made, the trustee is required to file a final report and account with the clerk of the superior court of the county where the sale is held, and the clerk is required to "audit the account and record it." N.C. Gen. Stat. § 45-21.33(b) (1999). In conducting this audit, the clerk is only authorized to determine whether the entries in the report reflect the actual receipts and disbursements made by the trustee. *Ferrell Brothers,* 118 N.C. App. at 461, 455 S.E.2d at 678.

This Court has explained that the application of the proceeds of the sale, made pursuant to subsection (a) of N.C. Gen. Stat. § 45-21.31, are "within the sole province of the trustee," and that the trustee is not required to receive pre-approval from the clerk of superior court, or the superior court, regarding the application of the proceeds. *Id.* Moreover, we have held that, within the context of a foreclosure proceeding pursuant to Chapter 45, Article 2A, the legislature has not provided any means for a party to contest payments made by a trustee pursuant to subsection (a), and that disputes regarding such payments are not issues properly before the clerk of superior court or the superior court as part of a foreclosure proceeding. *Id.* at 460, 455 S.E.2d at 677 (holding that a junior mortgagee's challenge as to the amount of the trustee's commission and attorney's fees, made pursuant to subsection (a) of N.C. Gen. Stat. § 45-21.31, was not properly before superior court in foreclosure proceeding). By contrast, a dispute as to who is entitled to the *surplus* of the proceeds, *after* the proceeds have been applied as required by subsection (a) of N.C. Gen. Stat. § 45-21.31, is an issue that may be heard by the clerk of superior court or the superior court within the context of a foreclosure proceeding. *See* N.C. Gen. Stat. § 45-21.32 (1999) (any person who claims that they are entitled to some portion of the sur-

plus may institute a special proceeding before the clerk of the superior court and, if any answer is filed raising issues of fact as to the ownership of the surplus, the proceeding is transferred to the superior court for trial).

In the present case, there are two categories of payments in dispute: (1) the trustee's attorney's fees of $9,619.68, resulting from time spent on the foreclosure sale by the trustee and the attorneys in his firm; and (2) the expenses charged by Mr. Price for the removal of Mr. Webber's personalty from the property, and for the care and storage of Mr. Webber's horses. Both of these categories of payments fall within the costs, expenses, and other obligations listed in subsection (a) of N.C. Gen. Stat. § 45-21.31. In *Merrit v. Edwards Ridge*, 323 N.C. 330, 372 S.E.2d 559 (1988), our Supreme Court described the nature of the costs, expenses, and other obligations listed in items (1), (2) and (3) of subsection (a) of N.C. Gen. Stat. § 45-21.31:

> Payment of the costs and expenses required by N.C.G.S. § 45-21.31(a) is not the obligation of the purchase money debtor whose deed of trust is being foreclosed. Nor is it, strictly speaking, the obligation of the buyer at the foreclosure sale. Instead, these statutory costs and expenses, including the trustee's commission, are simply obligations arising from the foreclosure sale which must be paid by the trustee before the remainder of the proceeds may be distributed.

*Id.* at 336, 372 S.E.2d at 563. Because the payments in dispute here fall under subsection (a), they are "within the sole province of the trustee." *Ferrell Brothers*, 118 N.C. App. at 461, 455 S.E.2d at 678. Moreover, neither the clerk of superior court nor the superior court had statutory authority under Chapter 45, Article 2A, to review the trustee's proposed application of the proceeds of the foreclosure sale, or to allow, disallow, or modify the amount of such proposed payments, or to rule on whether the trustee had breached his fiduciary duties.

We suggest that the proper procedure, as contemplated by Chapter 45, Article 2A, was for the trustee to have: (1) made all payments pursuant to subsection (a) of N.C. Gen. Stat. § 45-21.31 as he deemed proper in his discretion; (2) either paid the surplus to the persons entitled thereto, or paid the surplus to the clerk if there were any dispute as to who was entitled thereto, pursuant to N.C. Gen. Stat. § 45-21.31(b); and (3) filed a final report and account with the clerk pursuant to N.C. Gen. Stat. § 45-21.33. We note that a party wish-

ing to challenge payments made pursuant to N.C. Gen. Stat. § 45-21.31(a) may do so in a separate proceeding against the trustee for a breach of fiduciary duty once such payments have been made. *See Sloop v. London*, 27 N.C. App. 516, 219 S.E.2d 502 (1975) (action for wrongful foreclosure alleging, in part, breach of fiduciary duty by trustee). We also note that, presumably, a trustee seeking guidance as to the application of the proceeds of a foreclosure sale may institute a declaratory judgment action, provided the prerequisites for such an action (including an actual controversy between the parties) are satisfied. The judgment of the superior court, and the order of the clerk of superior court, are vacated.

Vacated.

Judges GREENE and THOMAS concur.